Mr. Adams Good morning. May it please the Court, I'm Brian Adams. I represent the appellate A.C. Widenhouse in this Title VII 1981 case. The issue in this appeal is a succession of errors that we contend were made by the trial judge that unfairly prejudiced A.C. Widenhouse and made a substantial impact on the outcome of the case. Those errors in order are primarily the retaliation instruction on Title VII retaliation instruction which was abrogated by the Nassar case which we've discussed in our brief. In short, the retaliation instruction that was given was a motivating factor, mixed motive instruction. Nassar said that the appropriate standard under Title VII is a but-for causation instruction. The second And that's been decided after the trial? Correct. And your Honor, to address that issue specifically, we had cited some cases in our brief that indicate that intervening changes in the law that fundamentally changed the standard should be considered. And the Johnson v. United States case which came after the Alano case, and we recognize that as it relates to that retaliation instruction, this is a a but-for causation instruction. They did not object at the end, so we acknowledge that. Let me ask you on that. You did submit one, but it looks like to me you also submitted one on the motivating factor one, which is really the one that went forth. I think you abandoned the but-for, but you actually submitted one along the lines of what the court gave. Right. And your Honor, I think that the question here is the impact that it had on the jury's reception and interpretation of that retaliation claim. And it really is a fundamental change in the law, and according to the standards, the abuse of discretion standards, whether it correctly stated the law without misleading or confusing the jury to the prejudice of A.C. Widenhouse, and under the plain error standard, we recognize that's a difficult standard to meet, but we think that this is one of the instances where it could be met. There was an error because that but-for or the motivating factor instruction was incorrect. Let me ask you on that, because looking at NASA, and I agree with you, I think I'm with you in terms of the plain error basis, and you're probably here. I think that's just here. But NASA goes in its whole analysis about the use of the word because, and essentially looks at it and says that's the plain language. Just the everyday common understanding of but-for. And when you look at the verdict in this case, there's a because there that the jury has made because of this. Why don't we follow NASA and say, okay, you said because mean that, so the jury made an actual finding of but-for. Right. And, Your Honor, I think to that point, the issue is the jury is to follow the instructions and use those instructions that they've been given when they're filling out that verdict sheet. So those instructions, which included the erroneous motivating factor instruction, informed their decision-making when they filled out that verdict sheet. And I acknowledge it did have the word because in it. But I'd like to take you a step further. I'm looking at the record, page 2378, and that's the verdict form, specifically as to question number five. It says, has the defendant demonstrated by a preponderance of the evidence that it would have terminated Contonious Gill for other reasons, even though his race and or his protected opposition was a motivating factor? And the answer is no. So I'm zooming in on the four other reasons. They've already found no. So why wouldn't that be inclusive of but-for? Well, and the reason that that's a significant issue in this case is that motivating factor, mixed motive instruction, did two things. Number one, it lessened Mr. Gill's burden of proof on what he had to show in order to establish retaliation, just that it's a cause. But the other thing that it did is it elevated the burden of proof, or it shifted the burden of proof to A.C. Widenhouse to establish the element of causation. What Nassar says is that burden is on Mr. Gill, and he has to prove that that retaliation or that protected activity, more specifically, was the but-for cause. But if you state four other reasons and the jury says no, what's left? Well, and I understand what you're saying, Your Honor, but I think that what Nassar is getting at is that the problem with that is it is shifting the burden. It's requiring, instead of requiring A.C. Widenhouse to produce evidence of a legitimate non-discriminatory or non-retaliatory reason, it's actually requiring them to establish that as a matter of their burden of proof. Well, let me ask the question another way. Under plain error, the burden is on you to show prejudice. Why doesn't that question demonstrate, rebut, stand in the way of your claim? Well, under the plain error standard, we've got to be able to show that it also affected our substantial rights. But a part of that showing is, and I'm reading from Olano, so there really isn't any reason to debate this, it must have been, for an error to affect substantial right, it generally must have been prejudicial. It must have affected the outcome of the district court proceedings. Why doesn't the jury's response countermand or at least throw a very large roadblock in your way, in your ability, to demonstrate your burden, to demonstrate prejudice? Your Honor, the way that I would answer that would be that I think to get to that, you back up to . . . Could you just stay with my question? Because the reason I'm asking it is, I'm still unclear as to your answer to Judge Child's question. So I'm trying to get at it, because I think it's a similar question another way. So if you could just stay on the question, I think that might actually help me more. Okay. And Judge Child. Thank you. And I don't have that verdict sheet in front of me. I'll repeat the question. Okay. I'd appreciate that. Okay. It's number 5, the record, page 2378. Has the defendant demonstrated by a preponderance of the evidence that it would have terminated Kentonius Gill for other reasons, even though his race and or his protected opposition was a motivating factor? Answer, no. All right. The only way that I know to answer the question is to say that that standard or that question goes to A.C. Wyden House's proof on that issue as to why it terminated him. And our position would be that it did articulate a reason that he refused to take a load and was insubordinate in the process. But this instigates for other reasons, and it just forecloses. Which the jury didn't. Right. And I understand your question. I think our concern is that the base instruction confused the jury, and that bled over into their analysis of that final question. That's about the only way that I know to answer it. And as we stated in our brief . . . It looks like it's the result of good lawyering on your part to me to get that question on that verdict sheet. That's a pretty . . . That verdict sheet question really goes to the heart of it. It sort of considers both. I mean, it says, okay, race may be a motivating factor, but is there anything else? They said, no, there's nothing else. So that answer has to be, that's all there is. That's . . . But I don't know who came up with that question, but I suspect you might have had something to do with it, because I'm not sure plenty of people would have come up with a question like that. That was a pretty good question. But it went the other way on it, which is, you know, you would think it would be the opportunity to argue the butt war was there. Right. Well, and, you know, going back to not to beat a dead horse, but on the issue of causation, we think that that instruction did make a difference, because there was evidence that Mr. Gill had alleged that he had complained 25 times each to Ms. Griffin and to Mr. Weiler. He hadn't been terminated on any of those occasions. It was only when this refusal to work came up that he was discharged. And, you know, one of the other things that we've argued in this case, and I know that there were objections that could have been made that weren't, but one of the things that was objected to was the punitive damages instruction. And we moved to bifurcate the trial, as you know. That motion was granted, and basically that kept the net worth evidence until the damages phase. But the trial court, after granting that motion, continued to express concerns about not the punitive damages evidence, but just the mere fact of instructing the jury on punitive damages and talking about, to use the court's words, punishing somebody and that type of thing during or at the conclusion of the liability phase of that case. And our contention is, given the court's concerns about that, we think that the retaliation instruction coupled with this did have an impact on the jury. And the court was very concerned about giving that instruction too early and abandoning protection of the defendant, although there was no net worth evidence. Why isn't your argument in this regard precluded by circuit precedent in Madison, which says whenever the district court orders a bifurcated trial, the jury should be required in the first phase to determine whether punitive damages are to be awarded, and only if the verdict so determines should it be presented in the second phase with the evidence relevant to the factors for finding the appropriate amount. And I remember that the appellees cited that in their brief, and I think the distinction between that case and this case is this. Number one, I think that that Madison case is talking about allowing the plaintiffs to put on their punitive damages evidence during the first phase. The jury should be required in the first phase to determine whether punitive damages are to be awarded. Required. Right. And I understand that, Your Honor. And I think that the difference is, in a lot of the cases involving credibility assessments and evidentiary rulings, they recognize that the trial court is uniquely attuned to the proceedings. And I think the distinction here is the court continued to express concerns about putting that issue of punishment and punitive damages in front of the jury. And then the court changed its mind in response to their arguments about judicial economy. In the Dixon case that we had cited said that when there's a real risk of prejudice, that the court should not step aside from that because of concerns of convenience and such. So I think that's a difference between this case and the Madison case. And the instruction was prejudicial. It caused . . . it allowed the EEOC and Mr. Gill to argue punitive damages-type issues during their closings at the end of the liability phase. The other issues that we've pointed out in the case are, one, the consolidated pipe evidence. The real issue there is, setting aside Jeff Workman's potential rebuttal testimony for a minute, is that we were not even allowed to cross-examine Mr. Gill on the statements that he had made in his deposition. Wasn't the district court judge allowed to do the 403 prejudicial versus probative analysis? And in this case, the judge just happened to find that it was prejudicial. Correct. To revisit a prior charge that might have had similar grounds, both in the allegations in the charge and then also his ultimate termination. Right. And that's subject to an abuse of discretion standard. Correct. And in this particular case, the court had issued a limiting instruction earlier in the case when Mr. Gill testified about his Rita retaliation state law claim. And our position is, this potential cross-examination of Mr. Gill could have been limited by the court, and the court could have given a limiting instruction. And we had cited some cases in our briefs . . . But the court abuses discretion. Well, our position is that the court did because it wasn't the type of evidence that would confuse the jury. It was Mr. Gill's own statement. And it wasn't cumulative evidence. We did not have any other evidence that we were able to utilize to challenge his credibility. And we had made the argument in our brief that he had opened the door for that cross-examination. And just briefly, he filed a charge against A.C. Widenhouse in 2008, I believe. He signed it under penalty of perjury, and the oath was important. He testified about signing it. He talked about the Rita charge and knowing that that was not the proper venue for asserting claims relating to race. Yet, in his deposition, knowing that EEOC is the proper venue for asserting racial claims, he talked about his consolidated pipe EEOC charge and said that only related to unfairness. And he claimed to have a hazy memory about what the allegations were, yet he left . . . Wouldn't the point only be that you're trying to say the allegations were similar? I mean, when you just get down to the . . . Well, not really. This was not the type of propensity evidence trying to show he was litigious. What we wanted to be able to do was to show that he had made, at a minimum, some evasive statements in his deposition. And we were not allowed to do that. And we think that that would have, with some of these other issues, made a difference in the case if we had been able to challenge his credibility. I think I'm going into some of my rebuttal time. And you have some time reserved for rebuttal. Thank you. Thank you. Ms. Sharpe? May it please the Court and opposing counsel, my name is Jenny Sharpe, and I represented Kentonia Skill, the plaintiff intervenor, at trial, and I'm happy to represent him today in this appeal. My co-counsel is Julie Gantz. She is seated next to me. She is with the EEOC. I'll be addressing the issues surrounding the impact of Nassar on the jury instructions as well as the award of attorney's fees, if we get to that. And Ms. Gantz will address any of the remaining issues. I do want to point out that Mr. Gill not only alleged claims under Title VII, he also alleged claims under Section 1981. And aren't those elements of proof essentially similar? Well, they're similar. But with respect to the Nassar decision, Nassar did not extend its holding to Section 1981 claims of retaliatory discharge. And I think that is very important here in this analysis. But don't they normally track them? Don't you normally use the analysis? Well, absolutely. You can use that analysis, but... But it's your point, then, that if the Court were even to remand Title VII, you've still prevailed on Section 1981, so then keep the claim in place. That is correct, Your Honor. And after all, Title VII was always meant to supplement Section 1981, not to supplant it. And the Supreme Court absolutely did not extend its holding to Section 1981 retaliation claims. If it had done so, it would have reversed the holding in CBOSC West, Incorporated v. Humphreys, in which that case found retaliation for opposing discrimination constitutes discrimination based on race under Section 1981. But I think the bottom line here is, even if you do find the Title VII retaliatory discharge instruction to be erroneous, that instruction constituted harmless error. In U.S. v. Ramos Cruz, which was a case cited by A.C. Weidenhouse in its brief, the Fourth Circuit held under similar circumstances that an instruction affected by an intervening change in the law is harmless if it's clear that a rational jury would have found the defendant liable absent the error. Now, that was a criminal case involving, I believe, witness tampering murder. There was a Supreme Court case that came along and changed what was required of the prosecution to establish a federal nexus, made it difficult for the prosecution, required them to meet a higher standard, but the outcome of that case was that the defendant was liable absent the error. Why are you assigning yourself a higher standard? Well, I'm not really. Are you analyzing it under harmless error as to which you bear the burden of proof when there was no objection? Well, I think it could go either way. I think as far as harmless error is concerned, the defendant does bear a much higher burden as far as plain error review is concerned. The evidence does not support a finding that is contrary to the jury's finding in this case. What are you relying on to say that the jury would have come to the same conclusion? This case was a profoundly appalling case of racial harassment. But what I'm asking specifically is, are you relying on the hostile environment claim to carry over into the retaliation claim? Surely there's an alternate basis for upholding the jury. The jury found that Mr. Gill was discharged because of his race in violation of Title VII and under Section 1981. Now, as far as the retaliatory discharge claim is concerned, the evidence supported a finding of pretext. A.C. Widenhouse presented a very incredible example. There was no explanation for its termination of Mr. Gill. Their strategy over the life of the litigation changed dramatically. It attempted to provide evidence, comparative evidence, that Mr. Gill would have been terminated anyway. The jury simply didn't believe it.  But, otherwise, under Vassar, do you agree with the holding that, short of what you're arguing, we would have been required to remand for the but-for standard? No, because of the presence of the Section 1981 claim was not affected by Nassar. I am still baffled about your harmless error argument, since Widenhouse just argued it as plain error. Well, again... Do you want to set a higher burden for yourself? I really don't, to be honest. I really don't want to set a higher burden for myself. There was not a substantial injustice which occurred for A.C. Widenhouse. The verdict would have been the same. Well, it's not a substantial injustice. It's Widenhouse's burden to prove-to show prejudice. And I don't think they've proven it, just like they did not prove their case at trial. Moreover, there was no objection regarding the jury instructions. I believe Judge Winn had asked a question regarding the jury instructions. And trial counsel for A.C. Widenhouse agreed with these instructions. There was no disagreement about the verdict sheet, as well. This case should not be remanded for a new trial on this issue alone. If error exists, again, they have not shown that there was error at this stage. And then, curiously, on your verdict form with respect to damages, you just have it all compiled into compensatory impunity, but without separating the claims. Yes, Your Honor. Was that by agreement? We all agreed on this. Okay. Absolutely all agreed on this. I was at trial. And that's reflected in the joint appendix, as well. As far as the attorney's fee question is concerned, I know you didn't get to that with Mr. Adams. I will just say this. The district court appropriately affixed an hourly rate. It did not abuse its fee. The cases that A.C. Widenhouse has relied upon to establish a downward adjustment to the fee awarded in this case really are not germane to this issue. My overhead, obviously, is not a barber factor. So we would respectfully ask that the court affirm the judgment of the district court. Thank you. Thank you. Ms. Gantz. Good morning, Your Honors. I just wanted to talk about a couple of things that were raised in your questioning. The exclusion of the testimony of Jeff Wortman, the district court, a big part of his exclusion was that no one knew what that witness was going to say. He had not been identified during discovery. He had not been deposed. His affidavit had not been taken. He was not under subpoena, and the defendant never made an offer of proof of what he would say. So the district court felt like it was just going to be his testimony against Gil's testimony about what happened, and that it would become a mini-trial, collateral, and just waste a lot of time and confuse the jury about a wholly different employment situation, almost like they'd be trying what happened at that other workplace, at Consolidated Pipe. Additionally, Gil's testimony about the egregious and shocking hostile work environment at the Concord facility was corroborated by two other witnesses, including the other person, Robert Floyd, that we were seeking relief for, and a white driver who was disinterested and testified about the display of nooses, the use of the N-word and other racial slurs. So there was five days of testimony about the circumstances of this environment. So even if Gil's credibility could have been somehow diminished by this testimony of a former employer's recollection of what a charge said, it was actually in 2006 was the date of the charge, six years earlier, the judge was firmly within his discretion in keeping it out under Rule 403. On the punitive damages issue, there was a liability phase of the trial, and the court decided to instruct the jury on liability for punitive damages during that first phase. The same evidence that would be relevant to the underlying discrimination claims would have been relevant to the punitive conduct? That's correct, Your Honor, and there was a great deal of overlapping evidence, not just how the harassment made the victims feel, but the fact that the dispatcher and the general manager did nothing after repeated complaints about the harassment. The owner of the company testified that he knew that the company was subject to Title VII, so all of that goes to whether they acted in reckless disregard of their rights. In addition, the liability, the judge instructed the jury that just because it was giving instruction on punitive damages didn't mean it was telling it to fine punitive damages. As it would not be telling it to fine for any damages? For anything. So this sort of argument could be made about liability instruction, about any damages instruction, and the way our system works is you have to believe that the jury is going to follow the instructions of the court, and this exact same argument could be made under any circumstances, and it's just hard to see how this could be any kind of abusive discretion given the Madison case that spells out how this should work if you do bifurcate a trial. So that was well within the district court's discretion. We didn't brief the Nassar issue because we didn't have a retaliation claim, but I think that you had made the best argument for why it wouldn't have made a difference if you  I'm not making an argument for you, I'm just... No, I just, it's very clear that it wouldn't have made a difference. If you didn't brief it, you can't argue. Oh, sorry. Okay. Well, I wanted to just point out that the jury reached its verdict in less than an hour. The evidence of discrimination was extremely compelling, and the fact that the jury didn't award damages that were off the charts, it didn't act like it was looking at things that it wasn't supposed to be looking at. I don't know if you have any questions about the closing argument that our U.S.C. attorney gave, but that argument was completely consistent with the evidence, and there was no objection. The evidence itself that was so those are really the only points I wanted to make, if you have no further questions. Thank you very much. Mr. Adams? Thank you, Your Honor. Just a few follow-up issues. With regard to the... Ms. Sharp pointed out that Nassar did not extend to 1981. The one point that we think is significant, although that's correct, and we don't contend otherwise, but the instruction that was given to the jury actually combined the 1981 and the Title VII claims, and we think that that may have confused the jury, if that's part of the analysis, because the jury was told that it's a motivating factor standard for both the Title VII and the Section 1981 claims. Now, with respect to the issue of how would we know if it confused them, and I know that there's the special verdict sheet for liability, but with regard to the damages, it's unclear, since they just awarded damages to each plaintiff without breaking them down for harassment, race discrimination, and retaliation. We don't know to what degree they might have been confused by that or impacted by the punitive damages evidence or instruction. One more thing about the punitive damages, and I understand that it's within the court's discretion to, in the Madison case, would indicate that the court should instruct the jury on that during the liability phase, but in terms of that issue of confusing or inflaming the jury, the other factor that I didn't mention before was that the court, in its preliminary instructions, told the jury that this is a bifurcated trial, the first phase is liability, and during this first phase, you're not to concern yourself with any issue of damages. Then the court continued to talk to counsel about concerns, about talking about punitive damages to the jury. When the judge, in the case, our argument is that told the jury that something had changed, and I understand that the court did have the protective instruction in there about, you know, not to be inflamed and just to look at the evidence, but the fact that those were in there after the judge said that damages were not going to be an issue, we think that that may have had an impact on the ultimate outcome of the case. But how could we reach that conclusion without assuming, as we may not, that the jury didn't follow the court's instructions? Right. I think the only thing that we have is just the court's own expressed concerns about what that might do to the jury's deliberations. With regard to the, just briefly about the jury, while I think Ms. Gant said that Mr. Gill's testimony was consistent with Mr. Floyd and Mr. Hewitt, who was someone who was a white truck driver who was presented by deposition, there were some significant differences in their testimony that at least in our mind raised some credibility issues. Mr. Gill had testified that he rarely saw Robbie Barber, the owner of the company, around, didn't know that he was the owner to report problems to. Robert Floyd had a very good relationship with Robbie Barber and said that he saw him on site every day and talked to him frequently, and they were friends. There were also discrepancies between some of the testimony he gave and what Mr. Hewitt said that he had observed. Mr. Hewitt didn't say that the general manager was someone who was constantly making racial comments. Mr. Gill said he made those comments hundreds of times a week. So we think that that coupled with his testimony about the EEOC charge raised, we think he opened the door to be questioned about the EEOC charge, and we think that it would have been important just in the overall picture and tenor of the case. One final thing in terms of the attorney's fees, the main thrust of our argument there is the relevant community and how the relevant community determines what the reasonable rate is is a significant factor, and the cases that we cite in our brief were from the middle district, and I think one of them at least was in an employment case, and they indicated that size of the firm and years of practice and relative overhead are factors that should be considered. So that was our main point on that. We didn't see that that had been properly considered, and there should have been a downward reduction on the rate. I'm over my time. Sorry. Thank you. Thank you very much.
judges: Allyson K. Duncan, James A. Wynn, Jr., J. Michelle Childs